392, Vin Ray Well Living Lab Inc. against, I wasn't saying, just Inc., against the United States, I guess. Mr. Vincenti. Good morning, Your Honors. May it please the Court. My name is Paul Vincenti. I represent the appellant Well Living Lab Inc. on this appeal. This is an appeal from a TTAB decision refusing the registration of my client's trademark. In the blue brief at 24, you argue that because well living is vague, as you put it, and might describe, quote, numerous other possible goods and services, ellipsis, it can be nothing other than suggestive of applicant services. But our precedent in Dupro, Duopro versus Enviro says the test for descriptiveness is, quote, is not whether someone presented with only the mark could guess what the goods or services are, close quote. Explaining that, quote, the question is whether someone who knows what the goods and services are will understand the mark to convey information about them. What authority supports your proposition that such alternative, quote, other possible goods or services is sufficient to turn a descriptive mark into a suggestive one? Well, I think, first of all, the Driven Innovations case from last year from this Court, which describes what merely descriptive means. And it means that the consumer immediately, without any imagination or leap, knows exactly what the specific services are. And when you have a case where you have a term that comprises many different meanings across a wide array of different subsections, certainly it suggests Do you think we rejected all our prior law? No, I think both of those premises are, I don't think they're conflicting. I think what the Driven Innovations case says is when you have a mark, and in that case it was blog, certainly dot blog was the mark and certainly it suggests that it provides information through blogs. There's no question it suggests the services, well-living lab. But it doesn't merely describe them because there's several different definitions. And I think that's where the error was here. Well, your other definition is archaic. And they took it into consideration. I think that's one of the errors, Your Honor, if I could just explain for a moment. I think, first of all, the somewhat archaic notation by Oxford did not apply to the adjective, which is a different definition than the noun. And the somewhat archaic notation only applies to the noun. The noun is defined as leading a good life, a moral life. The adjective is leading a virtuous or, in later use, a comfortable life. I think there's a distinction there. And the in later use comment by Oxford, I think So you're equating a comfortable life with a healthy life. I think it's a bit different. I think there's difference between a comfortable life and a healthy or nutritional or physical health from a physical standpoint life. I think it's a different meaning. And that's what I think driven innovation says. Certainly services from blogs, yes. But well living has many different meanings. Do you agree that one of those meanings is a healthy life or nutritious life? I do. But I think what the board found was it means healthiness. Well, healthiness cuts across so many different specters, spectrums. And just looking at the examiner's evidence, it means nutritional health. It means physical health. It's used as financial health. It's used as mental health. Well living. These are the terms even if you take the board's decision and looking at those examples, it cuts across a wide array of different industries and different meanings that the consumer would have to parse through in order to reach the specific services. And I think that's the What about when it's put with laboratory or labs? When it's put with labs together, then you might be thinking that the well living would mean nutrition or health since it's labs. And so labs suggest something maybe more in the medical or health field. We would submit, Your Honor, that when you take well living and put it with lab, it's really an aspirational mark. Just like one of the cases we submitted for vacuums, healthy home. What we're saying is well living lab. Test your products. You can have a well living philosophy, a well living life. And I think that's what the consumer is going to have to parse through. It's not immediate. And I think the board even acknowledged that. The board said the definition, the dictionary definition, which, again, we think it was an error to say it's somewhat archaic, but they said, Yes, we recognize consumers are going to associate that definition. Your Honor, we submit that should have ended the inquiry. That means there's more than one definition that the board found consumers would consider. That means there's multiple steps that the consumer would have to go through to reach. So they couldn't look at other evidence. No, they can look at other evidence. You said it should have ended it. I think it should have ended it when they took all evidence and said, Yes, we agree that the dictionary definition would be considered and even recognized by some consumers. But outweighed substantially by others. But I think if you take the other evidence, Your Honor, I do think you look at it. We're not suggesting otherwise. But look at that other evidence. Look at how many different uses of just the general word health is used, nutritional, physical, financial health, mental health, health insurance, family health, health in the workplace. These are all different areas. And we would submit, Your Honor, that that means it's a different mark. It's not — it's certainly suggestive, but it's not merely descriptive. It's not a situation — In what ways could well-living lab be incongruous? Well, I think, first of all, it's a term, and I think the record reflects this. It's nowhere else used. It wasn't found anywhere else used, well-living lab. So it's a composite mark, and it's a double entendre. So you take the term — Double entendre. If you were designing devices to catch children when they fell into wells, that would be a double entendre. But again, I think it's aspirational, Your Honor, because we're not selling well-living labs. We're saying test your products here, and you can have a well-living life. What that means to consumers could mean any different number of meanings. And I think that's what all of the evidence reflects, not just the dictionary definition, but the evidence that the examiner — Designed to attract trolls who live in wells. Perhaps. So you're looking for registration on the principal register, is that right? That's correct. And because it seems to me that everything that you've been saying could conceivably, with time, support such registration with a showing of secondary meaning. But that would mean starting out on the supplemental register, and that's not of interest? Or is that the fallback? Well, certainly that would be the fallback, Your Honor. But we would submit that we think that this is not a mark that requires a showing of secondary meaning. We think it's a suggestive mark. We think the Driven Innovations case — But that's really the question, isn't it? Yes. Yes, Your Honor. Okay. I agree with that. And I think the Driven Innovations case, .blog, and the definition was services provided on blogs, it certainly suggests what the services are, but it doesn't specifically describe them. That's what this Court held. And it doesn't mean that the consumer is going to immediately go to what the services are. There has to be some imagination and some mental leap. And I would just add, Your Honor, to stress that the definition of general health, that physical health that the Board said is the more modern use, that's nowhere found in any dictionary. And we just don't think that supports a substantial evidence standard here. I would just add, Your Honor, this idea of the more modern use. The test — I think we all agree with this. The test isn't, well, what would more consumers believe? That's not the test. The test is would the average consumer consider a number of meanings, not would more consumers go with a predominant meaning or would less consumers go with the dictionary meaning. It's not a quantitative analysis. And I think what the Board found here, and I think this is legal error, number one, when they said we acknowledge that consumers will associate this mark with the nondescriptive dictionary definition. That should have ended the inquiry. Second, on the factual error, it associated the somewhat archaic notation with the adjective, and that's not the case. Oxford Dictionary is very clear on that, and it's a different meaning. But, you know, underlying everything that the Board did necessarily is the concept that from now on with registration on the principal register, that ends it. Well, living is exclusively the property of your client. And the shift from genericness to exclusivity has to be a factor in every trademark registration. Is it not? I agree, Your Honor. But the mark here is well-living lab. It's not just well-living. It's a composite mark. We're not suggesting that just taking well-living, that's sufficient. It's a made-up term. It's well-living lab. And we think that's what takes it out of, certainly out of genericness and descriptiveness here. Unless Your Honor has any other questions, I'll sit. Thank you. Thank you, Mr. Vincenti. Ms. Haber. Good morning, and may it please the Court. In the red brief at 6, the PTO contends that the TTAB, quote, rejected well-living lab, I'm putting that in arguments, that the proposed mark is suggestive or incongruous because, I'm quoting, the mark requires no imagination or mental pause on the part of consumers to understand the nature of the services. But the TTAB is lacking in that affirmative analysis. The quote I read from the TTAB's decision appears to be nothing more than its initial summary of well-living lab's arguments. Where is the, in the decision, the TTAB decision, is there an affirmative analysis of potential suggestiveness? Well, I think, Your Honor, it's certainly at the end when they analyze the mark as a whole, well-living lab, and they say it conveys no more than the sum of its individual parts. It immediately informs consumers of applicant scientific research and product testing services about our feature characteristic of those services. And there, they are rejecting the notion that it's suggestive, incongruous, a double entendre, or any of that. And that's correct because there's only one legally significant meaning of well-living and of well-living labs in this case. Appellant makes much of what the court … But they look at the somewhat archaic meanings, so it's not the only one. It's just that they weigh it. Well, so, Your Honor, let's look at what they did there. It says that APPX6. They're analyzing and trying to figure out what do we do with this archaic definition? How does it factor in here? And they're assessing overall here what is the meaning of well-living as a definitional matter? And all they say is, okay, somewhat archaic means some people may still be aware. Yeah. That is not the same as a finding that consumers have that meaning in mind when they're encountering the mark. You're opposing … Don't talk when I talk. You're opposing counsel over spoken self. Correct. Yeah. Yes. It's just acknowledging some consumers may still be aware. It's not the same as finding that meaning is readily apparent when encountering this mark for these services, which involve human health and wellness. And the board also gave that definition some weight, right? Didn't it say we would give this some weight? They considered it, but I think in reaching a conclusion as to what the finding, I should say, and what the meaning of well-living is, we have to look at what it means today because registration is always assessed at the time the application is pending on the record of public perception today. About the argument that you should look at well-living, even if it had multiple different meanings, when you put well-living with lab, is that in any way more descriptive of what the services are when you put the two together? Yes, Your Honor. That directs you to the health and wellness meaning. That's the legally relevant meaning here because terms can have multiple dictionary definitions, and they can mean things in other contexts. What we care about for descriptiveness is if it has a meaning in the particular context of the services at issue, that's the relevant meaning, and that is the meaning here. All of the evidence of third-party use shows that it's referred to, they're referring to well-living as a healthy life, as wellness, wellness programs for well-living. And when you combine that with lab for these services that relate to research in the field of human health and wellness, you have the human health and wellness meaning is directly descriptive of these services, and that's the meaning that consumers would perceive because, as Judge Wallach pointed out, consumers know what the services are. They know it's a lab that conducts research in the field of human health and wellness. What's the meaning of well-living to them? This record shows it's healthy. It's the health meaning. I want to interject that the reason I said your friend overspoke is because it says may as opposed to are. Yes. May be aware as opposed to are. And just to explain sort of the situations where two meanings will take you out of a descriptiveness finding is very rare. A true double entendre is a very rare scenario, and it only happens in a case where both meanings are readily apparent, and both meanings have to be well-recognized. The board did not find here that the virtuous life meaning of well-living is well-recognized or that it would be the meaning that consumers have when they're encountering these services. The suggestion I gave, while somewhat facetious, if there was a catchment device for children falling into wells, that would be a true double entendre. That could be if those were the goods. I think, yes, that's probably true because the health meaning wouldn't really be the meaning that applies there. But a case like sugar and spice, the colonial stores case, that was a situation where the nursery rhyme, common, well-known, well-recognized nursery rhyme, meaning it had an independent meaning of the constituent elements, and that was a double entendre case. But normally, if it's two possible meanings, we're not, it's very hard to get around descriptiveness unless you can show that those meanings are both apparent. So the cinch case, that was the NRA K2 Corp case, not a precedent of the board, but that is an example of where the record had two definitions, both of which were equally plausible in the minds of consumers. One was tightening, it was snowboard bindings were the goods there. So cinch meant to tighten, and that was the examining attorney's evidence. Cinch also meant easy to use. But there was no evidence that the easy to use meaning, and the examining attorney didn't contend that the easy to use meaning was merely descriptive there. So the board expressed doubt. They said, we're not convinced it's merely descriptive because we have these two equally relevant meanings for these goods that consumers would appreciate. That's not this case. There's only one meaning, and it's merely descriptive. What about the suggestion that sometimes it can mean financial issues or other things other than health in the trademarks that the TTAB referred to, like on appendix page 7? Well, I think that there, again, we have to look at what the services are here,  and those examples, even the one that talks about financial matters, it talks about health and fitness and nutrition. And to the point that I think what counsel may have been arguing is that well-living is a vague term because it could be all these different kinds of health. They're all human health. That's what their identification of goods reads, human health. We have to have specific identifications that people understand. We all know that health involves several parts of fitness, diet, nutrition, but that doesn't mean it's not merely descriptive. We know what health encompasses and that it's just one aspect of human health. Their services encompass all aspects of human health. The Court has no further questions. Okay, thank you. Mr. Nisanti? Thank you, Your Honor. Just a few short points. I'd like to address the first point, Your Honor. Judge Wallace. Maybe as opposed to are. Pardon me? Maybe as opposed to are. Well, all of it, but that's one of the issues. First of all, the decision does not say some people recognize the dictionary definition. It says some consumers. What other consumers are we talking about in the analysis here? We're talking about, and what the Board is talking about, is consumers of my client's services. That can be the only thing. May be aware. May be aware, and I think as counsel just acknowledged. You're taking it as are. Yes. But as counsel just acknowledged in the cinch case, some consumers may, the issue was doubt, may. If some consumers may recognize that definition, that's doubt, and that means it's not singularly and merely. Supposing it said no consumers may be aware, and some might. If it says, if the finding was we do not see that any consumers would recognize this definition. Might be aware. But might is different. Because may and might are the same thing in this case. It's not permissive. Yes, but, Your Honor, I think, again, the legal definition of merely descriptive is merely and only descriptive, not just suggestive of the services. And with no mental leap and no imagination, the consumer goes exactly to the specific services from the descriptive definition. And I think the Board's decision there means that it's not merely descriptive. They refer to consumers, and they do say may, and that's doubt. And as in the cinch case, that's sufficient, I would think, to make it suggestive. Any doubts go in favor of the applicant here. The second point, Your Honor, in terms of the definition. So the definition in my client's application is product testing and scientific research for indoor environments regarding human health. Product testing for human health. Okay. Even taking that decision, accepting that decision of the Board, that looking at the examples the examiner submitted, health means a lot of things. And the Board itself decided that in ORIC. The issue and the mark in that case was healthy home. The product was HEPA vacuums. And the Board found health means a variety of things. It's aspirational. It could be human health. It could be environmental health. It could be a number of things. And I think that's where we are here. I think that's where this case fits. And I think that's what the driven innovations case is. So the labs you're referring to is the dogs in the house who are living well. Your Honor, I think lab also makes it even less descriptive. What is a well-living lab? What does that mean to a consumer? It's not well-living product testing. What's a well-living lab? Or it's not product testing lab. I think the examiner's position here and the Director's position is a little too stringent when talking about the merely descriptive test. So that's the point in that ORA case. They're saying health means a lot of things. It cuts across a wide variety of different meanings that the consumer's going to have to parse through and they will not make immediate leaps. They're going to have to use their imagination. Lastly, I want to stress the dictionary definition again, the adjective, which includes comfortable life in later use. Comfortable life is totally different than health and wellness. And I think it's reasonable to say, okay, test my products and I can have a comfortable life or I have a comfortable philosophy. I think that's entirely reasonable. And simply to say, well, we're going to reject that because the somewhat archaic notation goes with the noun, which is a different definition. I think that was clear error, Your Honor. We respectfully submit. And that means this case should be reversed. Unless there's any questions, Your Honor, I have nothing further. Thank you very much. Thank you. Thank you both. The case is taken under submission.